**FILED**

**February 1, 2018**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 3:56 P.M. EASTERN**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | | |
|---|---|---|
| **DWAYNE AKER,** | ) | **Docket No. 2017-02-0280** |
| **Employee,** | ) | |
| **v.** | ) | |
| **MILLER INDUSTRIES,** | ) | |
| **Employer,** | ) | **State File No. 10301-2017** |
| **and** | ) | |
| **LIBERTY MUTUAL INSURANCE** | ) | |
| **COMPANY,** | ) | |
| **Carrier.** | ) | **Judge Pamela B. Johnson** |

## EXPEDITED HEARING ORDER GRANTING BENEFITS

This matter came before the Court on January 23, 2018, for an Expedited Hearing to determine whether Mr. Aker is likely to prevail at a hearing on the merits that his injury arose primarily out of and in the course and scope of his employment and, if so, whether he is entitled to medical and temporary disability benefits. For the reasons set forth below, the Court holds Mr. Aker demonstrated he is likely to prevail at a hearing on the merits and grants his claim for benefits at this time.

### History of Claim

Dwayne Aker worked for Miller Industries as a painter. During his first day on the job, he fell into the pit in the paint shop floor while painting the bottom of a lowboy trailer on February 6, 2017.[1] When he fell, Mr. Aker landed primarily on his left foot and his nearly-straight left leg took most of the impact. His left side struck the concrete wall of the pit.

The following day, Mr. Aker called Tonya Metcalf, Miller Industries' H.R.

---

[1] The parties disputed how the fall occurred. Mr. Aker claimed he fell while straddling the uncovered pit. In contrast, his supervisor, Jonathan Jennings, indicated Mr. Aker fell when he stepped across the pit to paint the other side.

generalist, and requested medical attention. Ms. Metcalf instructed him to go to Industricare, where he reported pain along his rib cage into his back as well as pain in his foot and elbow. He also described tingling and numbness in his left low back.[2] The attending provider diagnosed work-related left rib contusion and lumbar spine sprain and assigned light duty restrictions, which Miller Industries accommodated. Mr. Aker continued to treat at Industricare and underwent physical therapy. He returned to Industricare reporting improvement and requested discontinuation of physical therapy and release to regular duty.

Following his return to regular duty, he developed left lower back pain radiating into the left groin area and returned to Industricare. The provider ordered physical therapy and a lumbar spine MRI and assigned light duty restrictions, which Miller Industries accommodated. Mr. Aker reported worsening pain in his left hip and commenced using crutches. Left hip x-rays revealed a "slightly impacted osteochondral fracture of the left femoral head likely due to avascular necrosis and trauma." The attending provider then ordered a left hip MRI and recommended continued use of crutches, non-weight bearing on the left, no driving, and sit-down work only.

Miller Industries accommodated the restrictions, but Mr. Aker reported difficulty tolerating the light-duty work. The attending physician reviewed the MRI, confirmed the diagnosis of avascular necrosis, and placed him off work until an orthopedist evaluated him. The doctor also deferred the work-related nature of "this problem" to the orthopedist. In the interim, Miller Industries terminated Mr. Aker on April 17, 2017, due to attendance policy violations.[3]

Mr. Aker selected Dr. Robert DeTroye from a panel of orthopedists. Mr. Aker reported no problems with his hip prior to this injury and no history of steroid or alcohol abuse. Dr. DeTroye reviewed the x-rays, MRI and exam findings and diagnosed left hip avascular necrosis with secondary arthritis. He indicated, "It is my opinion that this is not a work[-]related injury. The avascular necrosis is chronic[,] long standing[,] and predates his date of injury 2/6/17. The injury did not aggravate his underlying hip problem." Dr. DeTroye recommended continued use of crutches and, if symptoms continued, a total hip replacement. Thereafter, Miller Industries issued a Notice of

---

[2] The parties disputed whether Miller Industries offered immediate medical attention. Mr. Aker claimed Miller Industries did not offer medical attention when he said he would go home and soak in a tub. Jonathan Jennings, his supervisor, indicated he offered medical treatment but Mr. Aker said it was "nothing a cold beer and hot bath wouldn't cure."

[3] The parties offered conflicting testimony concerning whether Mr. Aker called-in when he missed work. Mr. Aker testified he called Ms. Metcalf every time he missed work, but he did not address the specific dates of unexcused absences leading to his termination and whether the unexcused absences were related to his work injury. Ms. Metcalf denied receiving telephone calls or voicemails from Mr. Aker before he had an unexcused absence but admitted she talked to him each time he saw the doctor and received restrictions.

Controversy and terminated Mr. Aker's workers' compensation benefits.

Mr. Aker sought an independent medical examination with Dr. William E. Kennedy. Dr. Kennedy reviewed medical records, obtained a history, performed a physical examination, and diagnosed idiopathic avascular necrosis of the left hip. Dr. Kennedy stated the work injury permanently aggravated and advanced the preexisting underlying avascular necrosis, arousing the condition from dormancy to a continuously painful and disabling reality. Dr. Kennedy explained,

> The mechanism of injury described in the incident of 2/6/17 and Mr. Aker's recollection of abrasions and contusions described above supported my conclusion that when he fell into the pit on 2/6/17 he suffered significant trauma to his left hip – trauma sufficient to permanently aggravate and advance the preexisting underlying avascular necrosis and to arouse it into a permanently and significantly disabling painful condition.

Dr. Kennedy recommended a left total hip replacement and post-surgical rehabilitation. He also recommended continued full-time use of crutches and light duty restrictions.

Dr. Kennedy further indicated Mr. Aker's low back pain after the work injury did not result in a permanent injury or aggravation and advancement of his preexisting lumbar spine condition when comparing the post-injury lumbar spine MRI to a pre-injury MRI.

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law defines "injury" as an injury by accident arising primarily out of and in the course and scope of employment that causes the need for medical treatment. An aggravation of a pre-existing condition is a compensable injury when "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A) (2017).

As the Workers' Compensation Appeals Board explained in *Miller v. Lowe's Home Centers, Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *13 (Oct. 21, 2015), "[A]n employee can satisfy the burden of proving a compensable aggravation if: (1) there is expert medical proof that the work accident 'contributed more than fifty percent (50%)' in causing the aggravation, and (2) the work accident was the cause of the aggravation 'more likely than not considering all causes.'" However, an employee need not prove every element of the claim by a preponderance of the evidence at an expedited hearing but must present "sufficient evidence from which the court can conclude that he or she is likely to prevail at a hearing on the merits, consistent with Tennessee Code Annotated section 50-6-239(d)(1)." *Id.,* citing *McCord v. Advantage Human Resourcing,*

2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

Also, "a trial judge has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Bass v. The Home Depot U.S.A., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9-10 (May 26, 2017) (internal citations omitted). When medical opinions conflict "the trial judge must obviously choose which view to believe." In doing so, the trial judge can consider "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Id.* (internal citations omitted). If one of the experts is an authorized treating physician, that expert's opinion is afforded a presumption of correctness on the issue of causation. *Id.* (internal citations omitted)

Here, the issue is whether the work injury aggravated and advanced Mr. Aker's avascular necrosis, causing the need for treatment. The authorized provider at Industricare ordered left hip x-rays and diagnosed "slightly impacted osteochondral fracture of the left femoral head likely due to avascular necrosis and *trauma*." (Emphasis added). However, later, the Industricare provider deferred the work-related nature of "this problem" to the orthopedist. The authorized orthopedist, Dr. DeTroye, declined to attribute the avascular necrosis to Mr. Aker's work-injury by stating that the avascular necrosis was chronic condition, predating the date of injury. The injury did not aggravate his underlying hip problem."

In contrast, Mr. Aker's IME physician, Dr. Kennedy, stated the mechanism of injury and Mr. Aker's recollection of abrasions and contusions supported the conclusion that Mr. Aker suffered significant trauma to his left hip when he fell into the pit; trauma sufficient to permanently aggravate and advance the preexisting underlying avascular necrosis and to arouse it into a permanently and significantly disabling painful condition.

In considering the conflicting expert opinion, the Court notes Dr. DeTroye's opinion is entitled to a rebuttable presumption of correctness as the authorized treating physician. To determine whether Dr. Kennedy's opinion rebutted Dr. DeTroye's opinion, the Court assesses the following factors: both orthopedic physicians are equally qualified and the circumstances of their examination are similar as both doctors saw Mr. Aker only once. The information available to them and the importance of that information by other experts weigh in favor of Dr. Kennedy, who comprehensively documented his evaluative process and the information he considered. When considering Mr. Aker's uncontroverted testimony concerning no prior hip complaints, symptoms, or treatment, the Court finds Dr. Kennedy's opinion most persuasive and further finds it successfully rebutted Dr. DeTroye's opinion.

Thus, the Court holds that Mr. Aker is likely to prevail at a hearing on the merits that his current need for left hip treatment arose primarily out of his employment.

4

Therefore, the Court grants his request for additional medical benefits. Dr. DeTroye shall remain the authorized treating physician.

Regarding his request for temporary disability benefits, Mr. Aker must show: (1) he became disabled from working due to a compensable injury; (2) there is a causal connection between his injury and his inability to work; and (3) the duration of the period of disability. *Jones v. Crencor*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

Here, Miller Industries paid temporary disability benefits and/or accommodated Mr. Aker's restrictions until his termination on April 27, 2017. Subsequently, Dr. DeTroye determined the avascular necrosis was not work-related. He did not address Mr. Aker's work capabilities but instructed the continued use of crutches. Dr. Kennedy recommended light duty restrictions. Miller Industries did not address whether it was capable of accommodating the use of crutches and/or Dr. Kennedy's light duty restrictions. As to the appropriateness of Mr. Aker's termination, Mr. Aker did not address with specificity whether the unexcused absences were connected to the work injury. For these reasons, at this time, the Court must conclude that Mr. Aker is not likely to prevail at a hearing on the merits as to his entitlement to temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Miller Industries shall provide Mr. Aker with medical treatment for his injuries as required by Tennessee Code Annotated section 50-6-204 (2017). Dr. DeTroye shall remain the authorized treating physician.

2. Mr. Aker's claim for temporary disability benefits is denied at this time.

3. This matter is set for a Scheduling Hearing on **April 5, 2018**, at **9:00 a.m. Eastern Time**. The parties must call 865-594-0091 or 855-543-5041 toll-free to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without the party's participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED February 1, 2018.**

**PAMELA B. JOHNSON, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Order Setting Expedited Hearing
5. Employer's Witness List
6. Employer's Position Statement

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. Attachments to the Technical Record shall not be submitted on appeal unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:

1. Dwayne Akers' Affidavit
2. Standard Form Medical Report of Dr. William Kennedy with attachments
3. Miller Industries Accident Investigation Report
4. Photographs
5. Panel of Physicians
6. Tonya Metcalf's Affidavit with attachments
   a. Separation Notice
   b. Time Card
   c. Employee Handbook
7. Medical Records with Table of Contents
   a. Watauga Orthopedics

b. Takoma Regional Hospital/Industricare
8. Notice of Controversy
9. Weekly Rate/Pay History
10. Wage Statement

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on February 1, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Charles R. DeVault, Jr., Employee's Attorney | | | X | crdevault@charter.net |
| Eric Shen, Employer's Attorney | | | X | eric.shen@libertymutual.com |

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**